IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| CASSANDRA BANKSTON, | * | |
| Plaintiff, | * | |
| vs. | * | CONSOLIDATED CASE NO. 3:06-CV-57(CDL) |
| | * | |
| WAL-MART STORES, INC., | * | |
| Defendant. | * | |

| | |
|---|---|
| ANTHONY BANKSTON, | * |
| Plaintiff, | * |
| vs. | * |
| | * |
| WAL-MART STORES, INC., | * |
| Defendant. | * |

O R D E R

This case arises from the alleged negligence of Defendant Wal-Mart Stores, Inc. in performing tire replacement service on the vehicle owned by Plaintiffs Cassandra and Anthony Bankston. Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 25). For the following reasons, Defendant's motion is granted in part and denied in part.

1

BACKGROUND

When construing the evidence in the light most favorable to Plaintiffs, the record establishes the following facts:

## I. The Tire Replacement Service

On August 9, 2002, Plaintiffs took their mutually-owned 1997 Volkswagen Jetta to Defendant Wal-Mart's Tire and Lube Express to have the two front tires replaced. Plaintiffs sat in a tent located outside the shop where they could observe Wal-Mart employee, Marcus Hill, perform the replacement. Plaintiff Anthony Bankston ("Mr. Bankston"), a certified auto mechanic, watched Hill replace the tires. Mr. Bankston noticed nothing out of the ordinary when Hill replaced the driver-side front tire; however, Mr. Bankston observed Hill struggle to replace the passenger-side front tire. After Mr. Bankston watched Hill install and remove the passenger-side wheel several times, he approached Hill to ask if anything was wrong. Hill informed Mr. Bankston that one of the bolts securing the wheel to the rotor (the "stud-bolts") was stripped.[1]

Hill also informed Mr. Bankston that Wal-Mart did not have replacement stud-bolts for the vehicle but that the Volkswagen

---

[1] Mr. Bankston also testified at his deposition that while he was watching Hill work on the tire, he never heard the air tools used to secure the stud-bolts to the rotor "torque down" and that it sounded like the stud-bolts were "spinning out." (A. Bankston Dep. 252:9-17, Jan. 22, 2007.) Mr. Hill admitted in his deposition that he did not follow Wal-Mart's written tire changing procedures because he left the stud-bolts on the concrete floor while he was performing other tasks. (Hill Dep. 120:4-121:10, Jan. 23, 2007.) Mr. Bankston also testified that Hill did not hand-turn the stud-bolts before using the air tools to tighten them, which would also be a violation of Wal-Mart procedure. (A. Bankston Dep. 252:20-22.)

2

dealership located approximately three miles from the Wal-Mart should have replacements. Mr. Bankston then observed Hill use a bolt from the driver-side front wheel to secure the passenger-side front wheel to the rotor. Plaintiff Cassandra Bankston ("Mrs. Bankston") paid for the tires and received a receipt from Hill indicating that "Stud bolts need replacing." (Def.'s Ex. 15 to A. Bankston Dep.) The Bankstons decided to drive immediately to the Volkswagen dealership to obtain a replacement for the stripped bolt.

## II. The Accident

When Plaintiffs left Wal-Mart, Mr. Bankston was driving and Mrs. Bankston was riding in the front passenger seat. Mr. Bankston turned left out of the Wal-Mart parking lot and steadily accelerated. When the vehicle reached approximately forty miles an hour, Mrs. Bankston alerted her husband to a strange "knocking noise." (A. Bankston Dep. 266:7-20.) Mr. Bankston attempted to pull the car off to the side of the road, but "the whole tire just shot off of the car." (*Id.* at 266:19-20.) Mr. Bankston struggled to get the car under control, but it "was bouncing like a basketball up and down in the road" and swerving from lane to lane. (*Id.* at 270:13-21.) After traveling a short distance, Mr. Bankston was able to bring the car to rest on the left shoulder. Plaintiffs were approximately one mile from the Wal-Mart when the accident occurred. Both Plaintiffs suffered physical injuries as a result of being thrown about the interior of the vehicle, and Plaintiffs' vehicle was damaged.

3

Plaintiffs contacted Hill, who arrived shortly before the police. All four stud-bolts had fallen out of the front passenger-side wheel assembly and were left in the road. The police photographed the vehicle and the scene with a disposable camera and gave the film to Plaintiffs, who later had it developed. Hill testified that he collected the stud-bolts from the roadway and placed them in the passenger side of the car, and the car was towed to the Volkswagen dealership. (Hill Dep. 159:9-13.) Hill and Mr. Bankston arrived at the dealership later that afternoon, and Hill took several pictures of the vehicle for the Wal-Mart's incident report and insurance claim. The Volkswagen dealership repaired Plaintiffs' vehicle but apparently did not retain the rotor or the wheel itself. Plaintiffs retained possession of the allegedly defective stud-bolts, and they contend that they delivered the bolts to their former attorney. Two of the four bolts have since gone missing.

### III. Plaintiffs' Claims

Plaintiffs allege that "Defendant negligently performed work on Plaintiff's vehicle's tires" and that "Defendant was negligent in allowing Plaintiff to leave the premises with a defective wheel assembly." (Compl. of C. Bankston ¶ 2; Compl. of A. Bankston ¶ 2.) Plaintiffs also argue that Defendant acted with such "gross negligence" and "wanton, willful, and reckless disregard for the safety" of Plaintiffs as to merit an award of punitive damages. (Compl. of C. Bankston ¶ 4; Compl. of A. Bankston ¶ 4.)

4

Defendant contends that summary judgment is appropriate in this case because nearly all the components of the allegedly defective wheel assembly—the wheel, the rotor, and two of the four stripped stud-bolts—are missing. Defendant argues that Plaintiffs are solely responsible for the spoliation of this evidence and that Defendant will be irreparably prejudiced if it is required to defend this case without the benefit of examining the physical evidence. In the event that the Court finds dismissal based on spoliation inappropriate, Defendant argues that it has no duty under Georgia law requiring it to prevent its invitees from leaving the premises under any condition, that Plaintiffs cannot show that Defendant's actions were the proximate cause of their injuries, and that Plaintiffs assumed the risk of traveling in the vehicle. Defendant also challenges Plaintiffs' claim for punitive damages.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

5

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

DISCUSSION

**I. Spoliation**

Defendant first argues that it is entitled to summary judgment because Plaintiffs breached their duty to preserve the key physical evidence in this case. Defendant contends that its defense will be

irreparably prejudiced by the spoliation of this evidence. Plaintiffs respond that Defendant had ample opportunity to inspect the physical evidence and that Defendant's employee, Marcus Hill, actually did so. Moreover, Plaintiffs contend that they provided Defendant with photographs and other physical evidence from which Defendant could mount a reasonable defense. The Court concludes that although dismissal of this case is not warranted, imposition of a spoliation sanction is necessary to counteract the prejudice suffered by Defendant.

In the Eleventh Circuit, "federal law governs the imposition of spoliation sanctions . . . because spoliation sanctions constitute an evidentiary matter." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). A court may remedy a spoliation violation by exercising one of three options: dismissing the case outright, giving a corrective jury instruction, or excluding evidence favorable to the spoliator. *Id*. at 945. In determining which remedy to impose, courts examine factors including:

> (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

*Id*.

An analysis of the foregoing factors supports the imposition of sanctions in this case. First, Defendant will likely be prejudiced by the spoliation of this evidence. Defendant will be unable to have

7

its experts examine the rotor, wheel, and two of four stud-bolts in an effort to rebut Plaintiffs' claims. While the existence of amateur photographs may somewhat mitigate the loss of the evidence, photographs are "no substitute for the actual evidence." *See Bridgestone/Firestone N. Am. Tire, LLC v. Campbell*, 258 Ga. App. 767, 769, 574 S.E.2d 923, 926 (2002).[2] The missing evidence is also practically important to Defendant, particularly since an expert's testimony about physical evidence is often the most reliable and convincing method of proving or disproving a claim. *See, e.g., Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539, 541, 469 S.E.2d 783, 785 (1996) (observing that some courts have held that physical evidence may "be far more useful and persuasive to the jury than photographs").

On the other hand, the circumstances of this case lessen the prejudice to Defendant to some extent. First, both parties are limited to presenting their case with the available photographs and the remaining stud-bolts, as it appears that no expert for either party ever examined the missing physical evidence. *See Bridgestone/Firestone*, 258 Ga. App. at 771, 574 S.E.2d at 928 ("Although the defendants are hampered by the lack of evidence, so, too, is [the plaintiff] . . . [since] all parties are limited to the photographs to present their case."). It also does not appear that

---

[2]In *Flury*, the Eleventh Circuit acknowledged that in determining which spoliation sanction is most appropriate, "Georgia law provides some guidance" because Georgia law "is wholly consistent with federal spoliation principles." 427 F.3d at 944.

8

Plaintiffs are attempting to abuse the judicial system by effecting a "trial by ambush"; Plaintiffs in this case began asserting claims against Defendant shortly after the accident. *Id.*, 574 S.E.2d at 927 (noting that the defendant was subject to "trial by ambush" when the plaintiff expressed intent to forego litigation, destroyed the relevant evidence, and then filed suit). Finally, with respect to the "bad faith" factor, the Court cannot say that Plaintiffs are entirely responsible for the spoliation—at least of the wheel and the rotor. *See Flury*, 927 F.3d at 946 (holding that "the court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party" to determine whether bad faith exists). The present record reveals that both parties bear some fault for failing to preserve the physical evidence in this case. Both parties appeared to understand at an early stage that litigation was likely: Mr. Bankston retained counsel even before his vehicle had been repaired, and Hill went to the accident scene, helped recover the stud-bolts, and took photographs of the evidence in order to help with Wal-Mart's insurance claim and incident report. (A. Bankston Dep. 285:7-286:5; Hill Dep. 149:12-17, 177:24-178:23, 180:2-15.) While Plaintiffs were under a duty to preserve evidence potentially relevant to the impending litigation, Defendant had similar opportunities and motive to preserve the critical evidence in this case.

Defendant strongly urges the Court to follow *Flury* and dismiss this case as a sanction for the spoliation of evidence. While the

9

Eleventh Circuit clearly permits dismissal of a case based on a plaintiff's failure to preserve crucial evidence, it also cautions that "[d]ismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Flury*, 427 F.3d at 944. In *Flury*, the plaintiff sued defendant Daimler Chrysler Corporation ("DCC") for injuries sustained when the plaintiff's airbag failed to deploy in an automobile accident. After the accident, the vehicle was towed to a body shop where it remained for approximately one month. When DCC's counsel requested the location of the vehicle, however, the vehicle had already been moved from the body shop. DCC never knew the location of the vehicle after it was removed from the body shop, and the plaintiff never responded to DCC's request. The vehicle was eventually sold for salvage. *Id.* at 940-42. The Eleventh Circuit determined that dismissal of the case was necessary to remedy the spoliation because the plaintiff was solely culpable for the destruction of the evidence and the prejudice to the defendant was extreme. *Id.* at 944-45.

In this case, it appears that a lesser sanction will suffice to counteract any prejudice suffered by Defendant. First, when the Court weighs Plaintiffs' culpability against that of Defendant, the balance does not weigh as heavily in favor of Defendant as it did in *Flury*. There is no evidence that Defendant ever requested the preservation of the physical evidence in this case, and Plaintiffs complied with Defendant's request to produce all the allegedly

defective stud-bolts that remained in their possession. *Cf. Flury*, 427 F.3d at 945 (finding plaintiff to be solely culpable for the destruction of evidence because plaintiff ignored defendant's requests to test the evidence); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 587 (4th Cir. 2001) (finding dismissal appropriate in part because the plaintiff failed to notify the defendant of his claim for a defective airbag until three years after the accident and failed to preserve the vehicle in its post-accident condition). The prejudice to Defendant is also less extreme when compared to *Flury* because, for example, at least some crucial physical evidence remains in this case. *Cf. Flury*, 427 F.3d at 945-46 (noting that the missing "airbag control system . . . was the crux of the case" and that "without examining the vehicle, defendant could not determine whether it remained in its 'condition when sold' at the time of the accident, as required by Georgia law"); *Bridgestone/Firestone*, 258 Ga. App. at 771, 574 S.E.2d at 928 (finding that exclusion of expert testimony and a limiting jury instruction was a "viable remedy" and dismissal was not required when both parties were limited to photographic evidence to prove their case). The Court, therefore, cannot say that dismissal is mandated in this case.

The Court concludes that a proper jury instruction will remedy any prejudice caused by the spoliated evidence. Of course, even an adverse jury instruction should be applied "only in exceptional cases," and "the greatest caution must be exercised in its application." *Johnson v. Riverdale Anesthesia Assocs.*, 249 Ga. App.

11

152, 154, 547 S.E.2d 347, 350 (2001) (internal quotation marks and citation omitted). However, given the facts of this case and for the foregoing reasons, the Court finds it appropriate to instruct the jury that if it finds Plaintiffs responsible for the spoliation of the evidence, the jury may construe the lack of evidence in favor of Defendant. The parties should therefore submit a charge on spoliation with their proposed jury instructions.

## II. Alleged Negligence of Defendant

Defendant next argues that no record evidence supports Plaintiffs' claim that Defendant's negligence was the proximate cause of their damages. Plaintiffs respond that a reasonable juror could presume negligence based on a theory of res ipsa loquitur.[3]

Georgia courts have described res ipsa loquitur as

> an evidentiary based rule which provides for an inference of negligence to arise from the occurrence of an injury-causing incident when the following elements are present: (1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary accident or contribution on the part of the plaintiff.

*Ken Thomas of Ga., Inc. v. Halim*, 266 Ga. App. 570, 573, 597 S.E.2d 615, 618 (2004) (internal quotation marks and citation omitted).

---

[3]Plaintiffs also allege that Defendant is liable for permitting Plaintiffs to leave Wal-Mart's premises with the knowledge that Plaintiffs' wheel assembly was defective. Plaintiffs argue that Defendant's negligent replacement of their tires created a dangerous condition that subjected Plaintiffs to an unreasonable risk of injury. Plaintiffs also contend that the receipt noting that "Stud bolts need replacing" coupled with Hill's admission that he did not follow Wal-Mart's procedures when replacing the tires indicate that Defendant had superior knowledge of the wheel assembly defect and thus had a duty to protect Plaintiffs from the hazardous condition.

12

Georgia courts have also held that the doctrine of res ipsa loquitur should be used sparingly. *See United States Fid. & Guar. Co. v. J.I. Case Co.*, 209 Ga. App. 61, 64, 432 S.E.2d 654, 657 (1993) ("[R]es ipsa loquitur should be applied with caution and only in extreme cases[.]") (internal quotation marks and citation omitted). In accordance with these principles, Georgia courts have formulated the general rule that "an injury allegedly caused by a mechanical failure in a car is not of a kind that does not occur in the absence of someone's negligence." *Ken Thomas, Inc.*, 266 Ga. App. at 573-74, 597 S.E.2d at 618 (holding that "the trial court correctly rejected [the plaintiff's] claim based on res ipsa loquitur that, because a steering malfunction occurred that caused or contributed to the accident, a reasonable inference arose that the malfunction occurred because [the defendant] negligently maintained or repaired the car").

Even if the presumption supplied by the doctrine of res ipsa loquitur does not apply in this case, Plaintiffs may still survive summary judgment by demonstrating that the record contains circumstantial evidence that supports a reasonable inference that Defendant negligently repaired their vehicle, and those negligent repairs caused Plaintiffs' damages. *See id.* at 574, 597 S.E.2d at 618-19. As the foregoing discussion indicates, the record in this case is replete with circumstantial evidence demonstrating the existence of genuine issues of material fact as to whether Defendant negligently replaced Plaintiffs' tire. Accordingly, Plaintiffs' negligence claim is not susceptible of summary adjudication.

13

**III. Assumption of the Risk**

Defendant finally argues that even if it was negligent in replacing Plaintiffs' tires, Plaintiffs assumed the risk of traveling in the vehicle because Mr. Bankston, a mechanic, knew that "Bolts that are misthreaded cannot hold for any distance of travel." (A. Bankston Aff. ¶ 5, Sept. 7, 2007.)

"[A]ssumption of the risk is an absolute defense to liability under any theory of negligence . . . ." *Sones v. Real Estate Dev. Group, Inc.*, 270 Ga. App. 507, 509, 606 S.E.2d 687, 690 (2004). In order to show that a plaintiff assumed the risk of a particular harm, a defendant "must establish that the plaintiff had (1) actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Id.*, 606 S.E.2d at 689. "Assumption of the risk means the plaintiff is fully aware of the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless." *Hillman v. Carlton Co.*, 240 Ga. App. 432, 435, 522 S.E.2d 681, 684 (1999). The issue of whether a plaintiff assumed the risk "'is not ordinarily susceptible of summary adjudication[,]' and summary judgment is appropriate only where the evidence is 'plain, palpable, and indisputable.'" *Bills v. Lowery*, 286 Ga. App. 301, 304, 648 S.E.2d 779, 782 (2007) (alteration in original) (internal quotation marks and citation omitted).

The Court finds that it is not plain, palpable, and undisputed that Plaintiffs knew and understood the extent of the danger

14

presented by the allegedly defective wheel assembly. Mr. and Mrs. Bankston both testify that they believed that only one of their vehicle's stud-bolts had been stripped. (C. Bankston Dep. 293:13-19, May 25, 2007; A. Bankston Dep. 259:7-260:1.) When viewing the record in the light most favorable to Plaintiffs, a reasonable juror could conclude that Hill's representations led Plaintiffs to believe that they could safely drive less than three miles with only one stud-bolt missing from the driver-side wheel assembly. The Court cannot say as a matter of law that Plaintiffs were fully aware of the extent of the dangerous condition caused by Defendant's negligence. *See, e.g., Taylor v. Howren*, 270 Ga. App. 226, 228, 606 S.E.2d 74, 76 (2004) (finding summary judgment inappropriate because jury question existed as to whether defendant provided plaintiff with "misleading information" that prevented plaintiff from "exercis[ing] a free and knowing choice to engage in the dangerous act" at issue). Accordingly, genuine issues of material fact exist as to whether Plaintiffs assumed the risk of driving with a potentially defective wheel assembly, and summary judgment is inappropriate.[4]

---

[4] It is also significant that Mrs. Bankston testified that she and her husband never discussed whether he believed that the vehicle was safe to operate with the allegedly defective stud-bolt or bolts. (C. Bankston Dep. 289:2-9.) Although Mr. Bankston is a certified auto mechanic and therefore may have some knowledge that would help him understand and appreciate the risk of operating a vehicle with a potentially defective wheel assembly, this knowledge cannot be imputed to Mrs. Bankston.

15

## IV. Punitive Damages

Georgia law authorizes the imposition of punitive damages "only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Accordingly, "[s]omething more than the mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, is insufficient to support punitive damages." *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 173, 537 S.E.2d 356, 361 (2000).

"Whether a defendant's actions are wilful, wanton, or evince an entire want of care as to authorize punitive damages by clear and convincing evidence under O.C.G.A. § 51-12-5.1(b) is normally an issue for consideration by a jury." *Keith v. Beard*, 219 Ga. App. 190, 194, 464 S.E.2d 633, 638 (1995) (citations omitted). However, when there is insufficient evidence of the requisite wilful or wanton behavior in the record to submit the question of punitive damages to a jury, summary adjudication is proper. *See id.*

In this case, there is no evidence in the record from which a reasonable juror could conclude, by clear and convincing evidence, that Defendant's conduct "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise

16

the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).  At most, Defendant's employee was grossly negligent when he replaced Plaintiffs' tires.  Accordingly, Defendant's motion for summary judgment is granted with respect to punitive damages.

CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 25) is granted with respect to punitive damages, but denied with respect to Plaintiffs' negligence claims.

IT IS SO ORDERED, this 15th day of February, 2008.

           S/Clay D. Land
           CLAY D. LAND
    UNITED STATES DISTRICT JUDGE